Gayfryd McNabb JOHNSON, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 83 Civ. 6639(MP).

United States District Court, S.D. New York.

Oct. 28, 1983.

Willkie, Farr & Gallagher by Phillipe Salomon, Anthony Phillips, and Richard Klein, New York City, for plaintiff Gayfryd McNabb Johnson.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Leona Sharpe, Michael Dolinger, and Frederick Lawrence, New York City, for defendant U.S.

## OPINION

MILTON POLLACK, District Judge.

The plaintiff, a taxpayer, sued herein on September 8, 1983 to abate a jeopardy tax assessment which the Internal Revenue Service levied against articles of ladies' jewelry, certain artworks, and other property on June 22, 1983. The abatement was sought pursuant to the special statute governing summary judicial review of jeopardy assessments, 26 U.S.C. § 7429.

The government, on the eve of a hearing at which this Court was to have adjudicated the question of the validity of the jeopardy assessment, capitulated and stipulated, on September 27, 1983, to abate the jeopardy assessment against "plaintiff's property," which the parties explicitly described in their stipulation as the jewelry, artworks, and other property referred to above.[1] The parties in open court on September 27, 1983 requested an order accordingly, and the stipulation was "So Ordered," signed and entered on September 27, 1983.

The plaintiff now seeks an order of contempt against the government, charging deliberate distortion and violation of the stipulation of settlement in respect of the ladies' jewelry and artworks. For the reasons expressed in this opinion, the plaintiff is entitled to certain relief.

The background is instructive.

At the threshold, two things should be made clear beyond peradventure of doubt: (1) that the tax liability asserted against the plaintiff, which is being litigated in the Tax Court of the United States, is in no way in issue nor affected by anything within the narrow scope of this case and nothing herein is intended to suggest that any of the ladies jewelry or art previously levied on as "plaintiff's property" (as defined in the government's stipulation) is now, or will ultimately be, beyond the reach of any enforcement of tax liability found against plaintiff;[2] and (2) that nothing stated in this opinion suggests that the government waived or intended to waive herein any rights that it may have against property of plaintiff's husband, Norman Johnson. Emphasis thereof in the government's arguments is only diversionary herein. The only property dealt with by this Court is the property which the government's written stipulation defined as "plaintiff's property," and the only question presented to this Court was whether the I.R.S. had a reasonable basis for asserting the provisional remedy of jeopardy assessment (attachment) of property claimed by the plaintiff as hers.

With those two caveats out of the way, we proceed to the brief history of this case.

---

1. The September 27, 1983 "Stipulation of Settlement and Order" described the "plaintiff's property" as follows:

   The artworks at the New Orleans Museum of Art presently stored pursuant to the Assessment, the jewelry previously inventoried, presently lodged and placed for safekeeping at the Hibernia National Bank in Box No. 985, the house and the contents located at 6145 St. Charles Avenue, New Orleans, Louisiana and presently under the control of the IRS, and the real property with the improvements located at 6145 St. Charles Avenue, New Orleans, Louisiana."

2. Accordingly, plaintiff is cautioned against any disposition of the property affected by the stipulation, pending resolution of the tax case, without ample notice to the government of any intention to dispose of any of it.

*Factual and Procedural Background*

Plaintiff is the estranged wife of Norman Johnson, a resident of New Orleans, Louisiana. Norman Johnson was convicted of tax conspiracy and is presently imprisoned pursuant to a sentence of imprisonment imposed in February, 1983. In the following month, March 1983, plaintiff sued Norman Johnson in Louisiana state court for divorce; that suit, and Norman Johnson's counterclaim therein, is presently pending, undetermined.

On February 4, 1983, the government, pursuant to 26 U.S.C. § 6861(a), issued a jeopardy assessment of over $4 million jointly against plaintiff and Norman Johnson for taxes due on unreported income for the years 1976 through 1979. Plaintiff and Norman Johnson had allegedly filed joint tax returns for those years.

On February 11, 1983, the IRS seized the marital home of plaintiff and Norman Johnson and its contents in New Orleans. Notice of such seizure was issued in the name of "Norman L. and Gayfryd Johnson", as was the corresponding levy, also dated February 11, 1983, which indicated an amount due the IRS of $4,218,121.50.

On or around March 9, 1983, plaintiff's counsel furnished the IRS with a list of ladies' jewelry located in a safe deposit box held in the name of Jack Martzell, Esq., a local, family attorney, and an inventory of art works on loan to the New Orleans Museum of Art. Notices of levy, dated March 10, 1983, were sent to Mr. Martzell and the Museum, levying upon all property in their possession belonging to the taxpayer "Norman L. and Gayfryd Johnson."

The documents indicate that the February 11, 1983 levy and seizure and the March 10, 1983 levies were pursuant to the February 4, 1983 jeopardy assessment issued jointly against plaintiff and Norman Johnson.

The plaintiff, in her individual capacity, brought on an application for administrative review of the jeopardy assessment against her; this was denied in March, 1983, and in April 1983, plaintiff in her individual capacity filed a suit in the United States District Court for the Eastern District of Louisiana challenging the jeopardy assessment of February 4, 1983, pursuant to 26 U.S.C. § 7429(b)(1), on the ground that it was technically deficient. The New Orleans court consolidated that action with a similar one brought by Norman Johnson. On June 22, 1983, the Honorable Henry A. Mentz, in the New Orleans federal court, ordered the IRS to abate the February 4, 1983 jeopardy assessment, but only as against plaintiff herein, and without prejudice to the government to refile "in a proper procedural form." The Court in New Orleans also set a hearing on the reasonableness of the assessment as to Norman Johnson for September 28, 1983. 26 U.S.C. § 7429.

On June 22, 1983, the government filed a fresh jeopardy assessment against "Gayfryd McNabb Johnson", the plaintiff, in an amount of $4.8 million. This second assessment was apparently based on facts identical to those of the original February 4, 1983 assessment made jointly against plaintiff and her husband.

On July 7, 1983, and pursuant to the June 22, 1983 jeopardy assessment against plaintiff, the IRS sent a notice of levy to Mr. Martzell, the possessor of the safe deposit box containing ladies' jewelry, stating that all of plaintiff's property in his possession was levied upon. The total amount due the IRS from plaintiff was stated in this notice to be $4,979,083.32.

On July 5, 1983, plaintiff filed a petition in the United States Tax Court for redetermination of the alleged tax deficiency against her; that matter is pending undetermined. Plaintiff also requested on July 25, 1983, an administrative review of the June 22, 1983 assessment but this did not accomplish any relief; on August 9, 1983 the IRS notified plaintiff that it would not abate the assessment.

This suit was filed in this Court on September 8, 1983 challenging the reasonableness of the provisional remedy utilized by the government, the June 22, 1983 jeopardy assessment. Immediate dates were sched-

uled for a determination, as required by law, within 20 days of the filing of the challenge.

The government moved for dismissal on the ground that venue over this action was lacking in this district, and requested an early hearing thereon which was held on September 22, 1983. Proof was submitted at that hearing which established *prima facie* that plaintiff was now a resident of New York City, having moved here in the summer of 1983. The evidence of such residence was not overcome by the government, which relied merely on questioning it by referring to past history which indicated that until recently, New Orleans addresses had been supplied on plaintiff's behalf. Plaintiff submitted affidavit proof that she had left New Orleans for the last time on August 4, 1983 and that she had established a *bona fide* residence and domicile in the State of New York, New York County. That was sufficient to establish venue in this Court. The government was offered an opportunity scheduled for September 27, 1983 to contest the New York domicile in an evidentiary hearing at which plaintiff was directed to appear and testify; that question was to be heard and resolved at the same time as the question of reasonableness of the claim of jeopardy to the interests of the IRS.

In addition to contesting the issue of venue, the government also moved that this case be transferred to the United States District Court for the Eastern District of Louisiana and consolidated for hearing with the proceeding by Norman Johnson to vacate the jeopardy assessment against him scheduled for September 28, 1983. Such transfer motion was denied on September 22, 1983, subject to any further argument which the government might have wished to make at the hearing which was to have been held on September 27, 1983.

The ultimate issue with which this court was presented by plaintiff's action in this court was both narrow and clear: whether the June 22, 1983 jeopardy assessment against plaintiff's property was unreasonable, and therefore improper and void, on the ground, advanced by plaintiff, that nothing suggested that she had taken or was about to take any action likely to impair the government's ability to recover such property in the event she was found liable for any or all of the taxes in question. *See* Complaint, ¶ 20.

Adjudication by this Court of the ultimate issue of the reasonableness of the jeopardy assessment against plaintiff's property was made unnecessary by the parties' submission of the stipulation of settlement on the morning of September 27, 1983, just before the hearing was to commence.

It was the fundamental and plain meaning of the stipulation and order that the property asserted to be that of the plaintiff reached by the June 22, 1983 jeopardy assessment would be freed of all seizures, liens, and levies in accordance with 26 U.S.C. § 7429(b)(2). The property so released was spelled out without any exception or equivocation in the stipulated release, and was designated "Plaintiff's property." [3]

No mention was made in writing or orally before the court that that "plaintiff's property" belonged to Norman Johnson, or that he had any property interest either as sole owner or as a community property owner of such property.[4] In short, and as all parties concede, the issue of ultimate ownership of the property affected by the September 27, 1983 stipulation and order

---

**3.** The language of the stipulation describing "plaintiff's property" is set out in full, *supra* at note 1.

**4.** Indeed, the government conceded to this Court at an October 24, 1983 conference that neither party addressed the issue of ownership of the property in question, and at no time either in negotiation of the stipulation or its presentation to the court was any mention made by the government that the marital community of plaintiff and Norman Johnson, or Mr. Johnson individually, claimed or had any interest in the property under stipulation.

was not raised before this court at any time.

The Court, being prepared to proceed with the pending hearing to determine the validity of the jeopardy assessment, accepted and relied on the agreement of the government as expressed and entered it as a judicial order and decree. This lifted forthwith and unequivocally the levy on the ladies' jewelry and the art works in issue herein.

*Government Conduct of which Plaintiff Now Complains*

Nonetheless, within two days of this Court's order, representatives of the IRS in Louisiana, apparently acting under the assumption that the artwork and ladies jewelry, property released under the order of this Court, was subject to community property treatment under Louisiana law, attempted to frustrate such release. Specifically, the government refused, in direct contravention of the explicit terms of the Stipulation of Settlement and Order, to relinquish the key and possession of the New Orleans safe deposit box containing the ladies jewelry,[5] and made demands on the Museum of Art in respect to the paintings.

The government purportedly based such refusal upon an allegedly still outstanding levy pursuant to the jeopardy assessment made on February 4, 1983, against Norman Johnson. However, the Notice of Seizure on which the government retained possession of the safe deposit box was issued and dated September 29, 1983, *two days after the entry of this Court's order* vacating the jeopardy assessment against plaintiff.

Responding to the government's actions with regard to the safe deposit box, plaintiff brought on an application in this Court for relief identical to that which she now seeks by Order to Show Cause signed by District Judge Broderick, acting as Emergency Judge, on September 30, 1983.[6] Be-

fore the return date of that application, the parties appeared before this Court at a conference on October 3, 1983. At the conclusion of the conference, this Court directed the parties to observe a ten-day "stand still" regarding plaintiff's property during which time the Court directed the parties to attempt to resolve their disputes so as to come within the requirements of the September 27, 1983 order. This Court was assured by the Assistant U.S. Attorney that he would endeavor to accomplish this; the government agreed to the standstill in the Court's chambers.

Not only did the government fail to take action during the ten-day standstill period to resolve the present controversy by agreement, but it undertook preparation of papers addressed to the New Orleans Court and commenced an action in the United States District Court for the Eastern District of Louisiana seeking an injunction that would require the return of the artwork to New Orleans. The papers thereon obviously must have been in preparation during the agreed "standstill." The government apparently requested and obtained from the New Orleans court an order *ex parte* of temporary injunction on October 14, which appears to have been vacated on October 17, 1983.[7]

Meanwhile, the New Orleans Museum of Art, upon presentation of this Court's order on the stipulation of September 27, 1983, released to plaintiff's representatives the art works being held by the Museum. The Museum was thereupon threatened with coercive consequences by the IRS and/or its legal representatives and the Museum was thus drawn into the circle of the Johnson controversies albeit it was an entirely innocent party.

The government has refused to transfer control of the safe deposit box containing

---

5. The stipulation states that "the IRS office for New Orleans, Louisiana, hereby agrees to relinquish the key, signatory privileges and all other rights to the Safe Deposit Vault No. 985 at the Hibernia National Bank, New Orleans, Louisiana." Stipulation of Settlement and Order, p. 4.

6. This was during the Second Circuit Judicial Conference at which all District Judges, other than those excused, were in attendance.

7. This Court has not been presented with the papers filed in the October 14, 1983 action.

the ladies jewelry and retains possession of it pursuant to the September 29, 1983 seizure. This conduct is in derogation of the authority and action of this Court, based on the stipulation, for several reasons. First, it violates the express terms of the stipulation, as set forth on page 4 thereof. Second, if the government believed it could execute the stipulation and nevertheless retain possession on some theory of Louisiana community property law, this worked a deception on the Court; no such belief was mentioned to the Court nor was any interest of Norman Johnson in the ladies jewelry ever iterated by the government representative in his settlement negotiations with plaintiff's attorney. Third, in any event, all facts presented to this Court concerning the ladies jewelry indicate that it is gifted property and that it therefore *prima facie* belongs to plaintiff in her individual capacity. Thus the government has no basis to continue to hold this property pursuant to any jeopardy assessment against Norman Johnson. Finally, the September 29, 1983 Notice of Seizure belies any good faith understanding of the government as to the meaning of the stipulation and tends to indicate that the government's continued hold on the jewelry is a second-guessing effort to evade its agreement.

Whether the government's October 14, 1983 action against plaintiff in a Louisiana federal court to require the return of the art, as well as its attempts to hold the Art Museum legally liable for releasing the artwork to plaintiff, constitute separate contempts is a question which need not be decided now.

Unfortunately, a stipulation concerning the art, orally agreed to in principle in chambers on October 24, 1983, has not eventuated in a writing—each side attempting to obtain an advantage therefrom instead of maintaining the status quo.

In an effort to disentangle the New Orleans Museum from the Johnson imbroglio, the Court suggested that the art be lodged, for safekeeping, with the Museum without prejudice to anyone's rights herein pending resolution of the title question raised by the Government on behalf of Norman Johnson. The suggestion would also have taken the Museum out of legal contentions raised against it by the parties. Involved negotiations, suggestions, and counter-suggestions have followed since the conference and have been fruitless; the parties are at a stand-off. The Museum should not be placed in position of being threatened by the District Director as a hostage, which apparently has occurred directly or on his behalf.

The jewelry still remains in the box, from which it was released by order of this Court of September 27, 1983, in violation, as shown herein, of the stipulated release by the government.

In these circumstances, the Court hereby orders that the art be forthwith delivered to a bonded warehouse in New York to be retained there subject to the further order of this Court following an appropriate disposition of the issue whether Norman Johnson has a community or sole property interest therein. A copy of the warehouse receipt shall be furnished to the government.

*Disposition and Relief*

The present posture of this enmeshed controversy is that the government is now openly contending for the first time that Norman Johnson has an interest, whether community or sole property the government does not say, in the jewelry and art works.

The assertion of such a claim ultimately is open to the government since it was not necessarily litigated in reaching the agreement to lift the attachment as unreasonable. Indeed, realizing its predicament, the government even asserts that the Assistant U.S. Attorney was not authorized to deal with the ownership of the personalty, but only to release the attachment thereon. Instead of dealing forthrightly, however, subterfuge and casuistic reasoning were here employed to finally bring forth a heretofore unrevealed position (or afterthought).

There is no doubt that the Stipulation was flouted—since, if indeed personal property of the plaintiff was not released by the

stipulation, there was nothing to be abated—there was no subject matter of the stipulation—and there was nothing attached to secure alleged jeopardy to a tax liability. Certainly the parties were not engaging in an empty exercise.

The subsequently added contention by the government as to ownership of the ladies' jewelry and of the art derivatively asserted now on behalf of Norman Johnson—belatedly—subsequent to the stipulation and order of September 27, 1983, is insufficient reason for ignoring the stipulation as written, or, in effect, reinstating by the back door the jeopardy assessment which was vacated. (Parenthetically, Norman Johnson is not a party herein and has not officially intervened or asserted in this suit any claim to the ladies' jewelry or the art.)

The questions of reasonableness of the alleged jeopardy to the government's taxes, and the ultimate ownership of the ladies' jewelry and art, are separate matters. The government now desires to augment the scope of the narrow question initially presented here and on which issue was joined and seeks an evidentiary hearing on the ownership of the personalty involved.[8] Presumably this is with a view to reinstating its attachment—this time treating the property in question as property of Norman Johnson and not as the stipulated "plaintiff's property." No prejudice to anyone will result by indulging such an evidentiary inquiry in appropriate context. While the government's maneuvers are clearly at fault herein, the ends of justice are supervening considerations on the facts and circumstances.

An evidentiary hearing is accordingly ordered, without reinstatement of the vacated jeopardy assessment, on the claim of ownership adverse to plaintiff. Costs and expenses of plaintiff, as well as counsel fees to date, are awarded to plaintiff as the proper measure of the relief to which she is entitled on the vacation of the jeopardy assessment and for the government's conduct in derogation of the Court's order of September 27, 1983. 26 U.S.C. § 7430. Those will be fixed on application to the Court on notice to the defendant.

Meanwhile, the art and jewelry are to be held in *statu quo*, subject to further order of the Court and the government is enjoined and directed to avoid and refrain from all acts that would or tend to impair or circumvent this order, except to appeal herefrom.

SO ORDERED.

---

8. The government for the first time in its latest memorandum (October 24, 1983) suggested that venue to determine ownership lies in the district where the property is located, citing, *inter alia*, 28 U.S.C. § 1402. If so, that issue, after being briefed, can be resolved by a transfer of it to New Orleans.